

# NUMBER 13-20-00148-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TATIYANA GENEVA ALTECOR,                                              **Appellant,**

## v.

UNITED PROPERTY AND CASUALTY
INSURANCE COMPANY,                                       **Appellee.**

## On appeal from the 370th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Justice Silva**

By two issues, pro se appellant Tatiyana Geneva Altecor appeals (1) the trial court's orders granting appellee United Property and Casualty Insurance Company's (UPC) traditional and no-evidence motion for summary judgment, and (2) denying her countering traditional motion for summary judgment. We affirm.

# I. BACKGROUND

On July 5, 2017, Allen Michael Egan filed his original petition against Altecor, his ex-wife, for malicious prosecution, defamation, and intentional infliction of emotional distress.[1] According to his petition, Egan was arrested and subsequently indicted for aggravated sexual assault of Altecor's daughter, who was less than six years old at the time of the alleged offense. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (f). Egan alleged that, "[d]uring their interview with the child, the prosecutors determined that the child had been coached by [Altecor] to make the allegations against [him]." The criminal case against Egan was dismissed on May 17, 2017. Altecor filed a counterpetition against Egan, asserting claims of assault and battery of a child, intentional infliction of emotional distress, libel and slander, tortious interference with an existing contract, "ratification," "breach of divorce decree marital settlement agreement," and breach of fiduciary duty.[2]

During a deposition, Altecor noted that she had a homeowners insurance policy through UPC which included $500,000 of personal liability coverage. Altecor tendered the suit to UPC for defense and coverage. UPC initially asserted that her policy did not cover intentional acts such as those alleged by Egan but advised Altecor that it would provide a defense at UPC's expense, even if the suit is groundless false or fraudulent. Egan amended his petition to include a negligence claim against Altecor and made a

---

[1] Egan and Altecor were divorced at the time the allegations arose. Egan ultimately nonsuited with prejudice all claims against Altecor pursuant to an out-of-court settlement on January 17, 2019, and is not a party to this appeal.

[2] We include only the causes of action as identified in Altecor's seventh and final amended counter petition filed December 16, 2019, and two supplemental petitions filed on December 20, 2019, and January 9, 2020, respectively.

subsequent settlement demand upon UPC. Although UPC initially refused to settle the claim, it ultimately agreed to settle for an undisclosed amount on Altecor's behalf. As part of the settlement, Egan agreed to nonsuit all claims against Altecor with prejudice.

Dissatisfied with UPC's decision to settle with Egan, Altecor filed cross claims-against UPC for deceptive trade practices, breach of contract, fraud in the inducement, gender discrimination, and civil conspiracy.[3] Thereafter, Altecor filed several motions seeking to prevent or reverse any settlement between Egan and UPC and objecting to Egan's notice of nonsuit, as well as a motion for no-evidence summary judgment against Egan.

The primary bases of Altecor's claims against UPC were UPC's decision to settle Egan's suit against Altecor and its alleged failures to investigate Egan's claims and timely notify Altecor of its decision to settle. Altecor specifically noted that the policy allowed UPC to "investigate and settle" claims as they deem appropriate, but she argued that the use of "'and' . . . [means] that investigation is definitely promised and must be conducted." Altecor alleged that "[a] settlement at this setting evolves in a harmful issue to [her] reputation due [to] admission of additional liability, unreasonable and unfavorable judgment, and financial loses [sic]" and that "[t]he process of an unfair procedure of the settlement disgraces and taints [her] reputation." Altecor alleged that her damages were

---

[3] We include only the causes of action as identified in Altecor's third and final amended cross petition filed March 11, 2019. Altecor filed a supplemental petition to her third amended cross petition on September 23, 2019, which was after the date the trial court issued notice of its ruling on UPC's motion for summary judgment; however, she did so without leave of court. *See* TEX. R. CIV. P. 166a(c) (permitting the trial court to render judgment based on "the pleadings . . . on file at the time of the hearing, or filed thereafter and before judgment *with permission of the court*") (emphasis added); *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 224 (Tex. App.—Fort Worth 2013, no pet.) ("A pleading filed after the summary judgment hearing without leave of court cannot be considered by the trial court.").

in the form of an "increase of insurance premium rate," "injury to character and reputation," "defense fees," and "emotional anguish," seeking a total of up to $2,500,000 in damages.

Citing the Deceptive Trade Practices Act (DTPA)[4], Altecor alleged that "[UPC] informed [her] by several certified letters and therefore induced [her] to believe that it [was] not a party of a lawsuit, but, in fact, intruded into the lawsuit." She also complained that "[UPC] failed to timely notify [her] about the change of its position [to settle]" and she "relied on [its] representations to her detriment."

For Altecor's unfair claim settlement practices action, she alleged that UPC violated Texas Insurance Code § 542.003(b)(2), (3) which prohibits "(2) failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy; [and] (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies." TEX. INS. CODE ANN. § 542.003(b)(2), (3). In addition, Altecor alleged the settlement "limited the amount of benefits or kind of coverage available for [her] because of [her] gender" and "failed to provide policy benefits to the woman-policyholder, to perform investigation and defense assistance" in violation of Texas Insurance Code § 544.002. *See id.* § 544.002(a) (prohibiting an insurer from, on the basis of gender or other immutable characteristics, "refus[ing] to insure or provide coverage . . . , refus[ing] to continue to insure or provide coverage . . . , limit[ing] the amount, extent, or kind of coverage . . . , or charg[ing] an individual a rate that is different from the rate charged to other individuals."). Altecor

---

[4] Altecor specifically cited Texas Business and Commerce Code § 17.46, which includes what is commonly known as the "laundry list" section of the DTPA. *See* TEX. BUS. & COM. CODE ANN § 17.46(b). However, she did not cite or reference any particular subsection of the laundry list. *See id.*

4

further alleged that UPC misrepresented "the terms of a policy or certificate of membership issued by a life, health, or casualty insurer" and "other benefits or advantages provided by the policy or certificate" in violation of Texas Insurance Code § 543.001(b)(1)(A), (B). *See id.* § 543.001(b) (prohibiting certain misrepresentations of the terms, benefits, or advantages of an insurance policy). Lastly, Altecor alleged UPC violated the notice requirements of Texas Insurance Code § 542.153. *See id.* § 542.153 (requiring notice of an offer to settle a claim "[n]ot later than the 10th day after the date [of] an initial offer" and notice of actual settlement "[n]ot later than the 30th day after the date a claim . . . is settled").[5]

UPC filed a combined no-evidence and traditional motion for summary judgment. As part of its traditional summary judgment motion, UPC alleged that Altecor failed to assert a viable cause of action against it. UPC attached multiple exhibits, including Altecor's homeowner's insurance policy, which stated in relevant part that "[UPC] may investigate and settle any claim or suit that we decide is appropriate." UPC also included multiple communications between it and Altecor from October 2018 relating to settlement demands by Egan and UPC's response thereto. The correspondence includes a settlement demand from Egan to UPC dated September 17, 2018, and an email sent to Altecor dated October 5, 2018, notifying her of the demand. It also included an additional letter, dated January 8, 2019, in which UPC notified Altecor of its reasons for settling- the suit and noted "[it] received [her] emails regarding the [suit] and regret that [she] feel[s]

---

[5] Altecor alleged that "on December 21, 2018, [she] received a phone call from [UPC] that the money w[ould] be sent to [Egan] following a settlement of the claim." Altecor does not allege when the offer to settle and subsequent settlement were made.

5

this matter should not be resolved." It also attached a copy of a letter including a check it issued to Altecor for attorneys' fees and costs that she incurred in defense of the suit, dated March 8, 2019.

In UPC's motion for traditional summary judgment, it argued that the contractual language stating "[it] may investigate and settle any claim or suit that we decide is appropriate" gave it the contractual right to settle the claim, regardless of the coverage limitations or factual posture of the claim.[6]

UPC's no-evidence motion for summary judgment challenged Altecor's DTPA claim, asserting that she "fails to put forth any admissible evidence of any 'false, misleading, or deceptive act or practice' purportedly committed by UPC." UPC additionally challenged Altecor's ability to produce evidence: (1) that it failed "to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy"; (2) "of any alleged misrepresentation of the [p]olicy"; (3) "of any alleged misrepresentation surrounding the [p]olicy's coverage or settlement"; and (4) "of any alleged failure to adopt or implement reasonable standards for the prompt investigation of claims arising under the insurer's policies." *See id*. §§ 542.003, 543.001. As to Altecor's gender discrimination claim, UPC challenged Altecor's ability to produce evidence of discrimination under the statute, but also noted that "settlement of [a] claim is not a

---

[6] UPC cited a series of cases it asserts provide precedent for its decision to settle the claims pursuant to the insurance agreement. *See Wayne Duddlesten, Inc. v. Highland Ins.*, 110 S.W.3d 85, 90 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (affirming summary judgment on breach of contract claim for paying "improper settlement" where policy stated, "We have the right to investigate and settle these claims proceedings or suits."); *see also Martin-de-Nicolas v. AAA Tex. Cnty. Mut. Ins.*, No. 03-17-00054-CV, 2018 WL 1868048, at *4, *7 (Tex. App.—Austin Apr. 19, 2018, pet. denied) (mem. op.) (upholding summary judgment for insurer on similar claim where policy stated, "We may settle any claim or suit as we think appropriate").

protected act." *See id.* § 544.002. For Altecor's breach of contract claim, UPC asserted that she "can put forth no evidence to establish one or more of the elements of her breach of contract claim, and because UPC complied with the [p]olicy's terms and conditions, [her] breach of contract action must fail." Finally, UPC challenged Altecor's ability to produce evidence on the damages she asserted she incurred.

In Altecor's response to UPC's traditional and no-evidence motion for summary judgment, she reiterated the factual background in her petitions. Altecor also included two tables in response to UPC's motions: one asserting its evidence is insufficient to support traditional summary judgment, and one setting out her "statement of material facts sufficient to raise a genuine issue regarding the case." Relevant portions of the table including "statement[s] of material fact" are included below.

### III. ALTECOR'S STATEMENT OF MATERIAL FACTS SUFFICIENT TO RAISE A GENUINE ISSUE REGARDING THE CASE

| Material Fact | Source (Citation), Dispute |
|---|---|
| 1. **Deceptive Trade Practice.** Cross-Defendant notified Altecor by multiple certified letters that Egan's claim is not covered by the policy and it does not has a duty to defend, nor indemnify such type of the claim. This way Cross-Defendant induced Altecor to believe that the UPC Insurance is not a party of the lawsuit, but, in fact, it intruded into the lawsuit. | a) Letters from UPC Insurance dated May 8, June 4, October 5 of 2018. <br> b) Altecor's emails to Insurance with inquiries about the updates. Those emails are not responded by the UPC Insurance which is a sign of setting of same path of Insurance non-involvement in the lawsuit. <br> c) The process of notification on December 21, 2018, to Altecor about the settlement. |

7

| | |
|---|---|
| 8. **Cross-Defendants statements as in § 26, part IV of the Motion** about no evidence of alleged by Cross-Defendant failures. | a) Evidence is presented. See Altecor's petition.<br><br>b) Cross-Defendant uses a boilerplate language. |
| 10. **Damages.** Altecor sets three types of damages: a) defense expense; b) increase of rate of the insurance due to a settlement for allegations that are not covered by the policy; c) mental anguish due to insurance conduct corresponding to independent injury notated by Rule 4 of the Texas Supreme Court opinion for evaluation of bad faith Insurance claims. | a) Altecor sets demand for compensation of damages in accordance with the rule 4 of Texas Supreme Court opinion.<br><br>b) Compensation for defense expense had become an integral part of eventual acknowledgement of the claim by Cross-Defendant due to the settlement it made.<br><br>c) Cross-Defendant had pronounced to pay for such expense, and if not, Altecor would have to set this demand with corresponding rule of the same Texas Supreme Court opinion. |

Altecor did not attach any exhibits, such as affidavits or other evidence, to her response to UPC's traditional and no-evidence motions for summary judgment. UPC subsequently objected to Altecor's response as untimely and moved to strike it, arguing that it "[was] replete with unsubstantiated and unproven and unprovable allegations and statements without the benefit of facts or admissible evidence." However, no order granting or denying UPC's objections or motion to strike are found in the record.

Altecor filed her own traditional motion for summary judgment as to her claims against UPC. In her motion, Altecor again reiterated the factual background from her previous pleadings, motions, and responses. Altecor attached to her motion for summary judgment two exhibits consisting of communications between herself and UPC, primarily relating to her objection to the settlement of Egan's lawsuit. According to Altecor's brief,

8

the trial court set UPC's combined motion for summary judgment for consideration but did not set hers for consideration.

On September 19, 2019, the trial court issued a letter granting UPC's motion for summary judgment and a letter denying Altecor's motion, directing the parties to file an order consistent with the court's notices. Altecor filed objections to UPC's summary judgment evidence, authorities, and "affirmations" on October 15, asking the trial court to strike certain portions of UPC's motion. No ruling on Altecor's objections or motion to strike appear in the record. On October 18, Altecor filed a "Motion for Reconsideration and to Modify, Correct, or Reform Rulling [sic] Done 09/19/2019 on [UPC]'s Motion for Summary Judgment." Altecor argued therein that UPC's decision to settle was groundless, the insurance policy did not cover the claim against her, and UPC did not have the right to settle the claim against her. Altecor further argued that UPC failed to present evidence negating each of her claims. Lastly, Altecor asserted that a question of fact existed as to whether the insurance policy covered the claims against her. The trial court denied her motion on November 12, 2019.

On December 6, 2019, Altecor filed a motion for new trial and for reconsideration on her motion for summary judgment. She argued that her motion for summary judgment had not been set for submission, which she alleged is required as part of due process. Altecor also filed a motion for new trial with respect to UPC's summary judgment motion. Without signing an order on either summary judgment motion, the trial court signed an order setting Altecor's motion for summary judgment for consideration on February 10, 2020. An order severing Altecor's claims against UPC was severed from her claims

9

against Egan was signed on February 5, 2020, and Altecor's notice of appeal was filed in the severed cause on March 5, 2020. Altecor's notice of appeal sought to challenge eight separate orders.[7]

On January 10, 2022, this Court abated this appeal and remanded it to the trial court to determine whether the orders relating to summary judgment had been signed and, if not, to correct the record. On January 21, we received the fifth supplemental clerk's record which included an order granting UPC's motion for summary judgment and an order denying Altecor's motion for summary judgment.

## II.  STANDING

### A.  Applicable Law

Standing is a component of subject matter jurisdiction, which cannot be waived. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). Whether a party has standing to maintain a suit is a question of law. *Tex. Nat. Res. Conserv. Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002) "The doctrine of standing . . . goes to whether or not a court has subject matter jurisdiction to decide a case." *Meyers*, 548 S.W.3d at 484. (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). If the plaintiff does not have standing, the trial court lacks subject matter jurisdiction to consider the claim. *Id.* "A court can—and if in doubt, must—raise standing on its own at any time." *Id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46).

---

[7] The related appellate cause numbers 13-20-00150-CV, 13-20-00151-CV, 13-20-00152-CV, 13-20-00153-CV, 13-20-00154-CV, and 13-20-00155-CV were dismissed for want of jurisdiction on July 30, 2020. However, appellate cause number 13-20-00156-CV, an additional related case, is being considered.

When reviewing subject matter jurisdiction, we "constru[e] the pleadings liberally in favor of the plaintiff and consider[] the plaintiff's intent." *Id.* at 486 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). However, if the pleadings affirmatively negate jurisdiction, the matter should be dismissed. *Id.* (citing *Miranda*, 133 S.W.3d at 227). Where no private cause of action exists, a private citizen lacks standing to bring the claims. *See SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 155 (Tex. App.—El Paso 2007, pet. denied); *Bickham v. Dallas County*, 612 S.W.3d 663, 670 (Tex. App.—Dallas 2020, pet. denied) ("The fact that a statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person." (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 687 (1979))). "We apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafter's intent is clearly expressed from the language as written." *Bickham*, 612 S.W.3d at 670 (quoting *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004)).

## B.     Insurance Code Violations

### 1.     Prohibited Claim Settlement Practices

Texas Insurance Code § 542.003 prohibits insurers from engaging in certain unfair claim settlement practices. TEX. INS. CODE ANN. § 542.003. In particular, insurers may not "fail[] to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy" or "fail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies." *Id.* § 542.003(b)(2), (3). Chapter 542 requires the Texas Department of Insurance to

11

"establish a system for receiving and processing individual complaints alleging a violation of [Subchapter A]" and other investigative requirements related to the number of complaints. *Id.* § 542.008. However, Chapter 542 does not create a private cause of action. *See Old Am. Ins. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 280 (Tex. App.—Fort Worth 2018, no pet.); *see also First Am. Title Ins. v. Patriot Bank*, No. 01-14-00170-CV, 2015 WL 2228549, at *7 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.).

### 2. Gender Discrimination

Texas Insurance Code § 544.002 prohibits insurers from refusing to

> [i]nsure or provide coverage to an individual, refuse to continue to insure or provide coverage to an individual, limit the amount, extent, or kind of coverage available for an individual, or charge an individual a rate that is different from the rate charged to other individuals for the same coverage because of the individual's . . . gender.

TEX. INS. CODE ANN. § 544.002(a)(2). An insurer who violates § 544.002 may be subject to sanctions or administrative penalties found in Chapters 82 and 84 of the insurance code. *Id.* § 544.004(a); *see id.* § 82.001–.056 (sanctions assessed by the commissioner); *id.* §§ 84.001–.051 (administrative penalties assessed by the commissioner). However, § 544.002 does not create a private cause of action. *Perez v. Blue Cross Blue Shield of Tex., Inc.*, 127 S.W.3d 826, 834 (Tex. App.—Austin 2003, pet. denied) (analyzing private cause of action under previous but similar version of statute); *cf.* TEX. INS. CODE ANN. § 544.054 (creating private judicial remedy for an individual who suffered economic

damages pursuant to a violation of § 544.052[8]).

### 3. Misrepresentation

Texas Insurance Code § 543.001(b)(1) prohibits a casualty insurer from "issu[ing], circulat[ing], or caus[ing] or permit[ting] to be issued or circulated any statement, including an illustration or estimate, that misrepresents the terms of a policy or certificate of membership issued by a . . . casualty insurer" or "other benefits or advantages provided by the policy or certificate." TEX. INS. CODE ANN. § 543.001(b)(1)(A), (B). The only penalties and actions specifically permitted under Chapter 543 are found in Subchapter B, which permits the commissioner of the Texas Department of Insurance to "suspend or revoke the certificate, charter, permit, or license to engage in the business of insurance of [a] society, association, corporation, or person that violates Subchapter A." *Id.* § 543.051(a). Further, a violation of Subchapter A constitutes a Class A misdemeanor. TEX. INS. CODE ANN. § 543.052(a), (b). Chapter 543 does not provide for a private cause of action. *See Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp.2d 938, 963 (E.D. Tex. 2011).

### 4. Notice

Subchapter D of Texas Insurance Code Chapter 542 imposes certain deadlines

---

[8] Section 544.052 prohibits a person from

> engag[ing] in unfair discrimination or permit[ting] unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in (1) the amount of premium policy fees, or rates charged for a policy or contract of insurance; (2) the benefits payable under a policy or contract of insurance; or (3) any of the terms or conditions of a policy or contract of insurance.

TEX. INS. CODE ANN. § 544.052.

on insurers as it relates to settlement offers and acceptance. *Id.* § 542.153. In particular, an insurer must notify the insured by writing within ten days of an initial offer to settle a claim against the insured, and within thirty days of a settlement. *Id.* § 542.153(a), (b). The Subchapter provides authority for the commissioner of the department of insurance to adopt rules to implement it. *Id.* § 542.154. However, the Subchapter does not create a private cause of action. *Compare id.* § 541.151 (providing private cause of action for persons damaged by acts prohibited under Subchapter B of Chapter 541) *with id.* § 542.151–.154; *see also Mid-Continent Cas. Co. v. Eland Energy, Inc.*, Civ. A. No. 3:06-CV-1576-D, 2009 WL 3074618, at *24 (N.D. Tex. Mar. 30, 2009) (noting § 542.153 does not create a private cause of action).

## C. Analysis

UPC challenged each of Altecor's causes of action under the insurance code on no-evidence and traditional summary judgment bases. *See* TEX. R. CIV. P. 166a(i); TEX. INS. CODE ANN. §§ 542.003(2), (3) (unfair settlement practices), 542.153 (notice requirements) [9], 543.001(1)(A), (B) (misrepresentation) [10], 544.002(a)(2) (gender discrimination). However, these statutes do not create private causes of action. *See Old Am. Ins. Co.*, 571 S.W.3d at 280 (no private cause of action under Chapter 542 unfair

---

[9] To refute Altecor's claims regarding the notice requirements, UPC included its original response to Egan's *Stowers* demand, additional written communications between UPC and Altecor, and a letter from UPC to Altecor regarding the accepted settlement between Egan and UPC that it alleges complies with all notice requirements.

[10] For her misrepresentation claim, Altecor alleged that she would not have signed the insurance agreement with UPC if she had known UPC could act on its own, without Altecor's consent, to settle a claim, or settle a claim without an investigation. In response, as part of its traditional motion for summary judgment, UPC provided a copy of the insurance agreement which contained a provision that "[UPC] may investigate and settle any claim or suit that [it] decide[s] is appropriate."

settlement practices); *Encompass Off. Sols.*, 775 F. Supp.2d at 963 (no private cause of action under Texas Insurance Code § 543.001 for misrepresentation); *Perez*, 127 S.W.3d at 834 (no private cause of action for gender discrimination under prior version of statute); *see also Mid-Continent Cas. Co.*, 2009 WL 3074618, at \*24 (no private cause of action under Texas Insurance Code § 542.153 for violating notice requirements). This contrasts with other portions of the insurance code which specifically permit private causes of action. *See, e.g.*, TEX. INS. CODE. ANN. § 541.151; *see also Brown*, 156 S.W.3d at 568 ("[W]hen the Legislature includes a right or remedy in one part of a code and omits it in another, that may be precisely what the Legislature intended."). Altecor argues she maintained standing "because these [s]tatutes provide remedies to a damaged by violations 'person' who is described in similar language of [s]tatute 541." Presumably, Altecor is referring to *Chapter* 541 of the insurance code, although no reference to any section under Chapter 541 can be found in her petition. However, while § 541.151 permits private causes of action, it specifically limits them to actions prohibited by §§ 541.051–.061 (Subchapter B of Chapter 541) or violations of the DTPA laundry list. *See* TEX. INS. CODE ANN. § 541.151.[11] Altecor made no specific allegations under these statutes.

Without a private cause of action, Altecor lacked standing to bring the claims under the statutes she specified. *See Hijar*, 214 S.W.3d at 155; *Bickham*, 612 S.W.3d at 670. Without standing, the trial court lacked subject matter jurisdiction over Altecor's claims. *See Meyers*, 548 S.W.3d at 484. As such, even if Altecor had presented evidence creating

---

[11] Section 541.151 also limits a cause of action to persons "who sustain[ed] actual damages." *See* TEX. INS. CODE ANN. § 541.151; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (defining "actual damages" under the insurance code as damages recoverable at common law, including benefit of the bargain damages).

a genuine issue of material fact under these statutes, these claims should be dismissed as a matter of law. *See id.*; *IT–Davy*, 74 S.W.3d at 855.

We now address the remaining causes of action.

### III.    UPC's No-Evidence Summary Judgment

Altecor presents two issues: (1) "[UPC's] motion for summary judgement [sic] was legally insufficient;" and (2) "[Altecor's] motion for summary judgement [sic] was legally sufficient."[12] Based on her supporting arguments, we interpret Altecor's issues as arguing that the trial court erred (1) in granting UPC's motion for summary judgment; and (2) denying her motion for summary judgment.

### A.    Standard of Review

We review a trial court's grant of a motion for summary judgment de novo.[13] *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Id.* (citing *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)). "When both parties move for summary judgment and the trial court

---

[12] Altecor's first issue has four supporting sub-issues while her second issue has two supporting sub-issues. We address each sub-issue to the extent necessary to resolve this appeal. *See* Tex. R. App. P. 47.4 (requiring memorandum opinions be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

[13] UPC argues that Altecor's appeal should be limited to the denial of her motion for reconsideration, which is reviewed under an abuse of discretion standard. *See Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). However, because Altecor stated in her notice of appeal that she was appealing the trial court's denial of her motion for summary judgment, we conclude she made a bona fide attempt to invoke this Court's jurisdiction to consider the summary judgment. *See In re J.M.*, 396 S.W.3d 528, 529–31 (Tex. 2013) (per curiam). Because UPC provided an argument as to the trial court's granting of its motion for summary judgment, it will not be prejudiced by our review.

16

grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Id.* (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020).

"When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). After a reasonable time for discovery has passed, a party may move for a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). The trial court "*must* grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id*. (emphasis added). "To defeat a no-evidence motion, the non[]movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *Parker*, 514 S.W.3d at 220. "If the non[]movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* at 219.

"Generally, pleadings are not competent evidence, even if sworn or verified." *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *see Krishnan v. Law Off. of Preston Henrichson, P.C.*, 83 S.W.3d 295, 300 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). Responses to summary judgment, even if

17

verified, are not proper summary judgment proof. *Nuszen v. Burton*, 494 S.W.3d 799, 804 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Painter v. Amerimex Drilling I, Ltd*., 561 S.W.3d 125, 130 (Tex. 2018). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Id.* Evidence is conclusive only if reasonable people could not differ in their conclusions. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017); *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## B.    Applicable Law

### 1.    DTPA

"The elements of [a] DTPA action[] are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)); *see also Gallegos v. Quintero*, No. 13-16-00497-CV, 2018 WL 655539, at *3 (Tex. App.— Corpus Christi–Edinburg Feb. 1, 2018, pet. denied) (mem. op.). The DTPA includes a list of actions that constitute false, misleading, or deceptive acts or practices, commonly

18

referred to as "laundry list" violations. TEX. BUS. & COM. CODE ANN. § 17.46(b). However, the list is not exclusive. *Id.*; *see id.* §§ 17.461–.464; *but see id.* § 17.46(d) (limiting relief for false, misleading, or deceptive acts or practices found under § 17.50(a)(1) to violations of the "laundry list" items include in § 17.46(b)).

A consumer who prevails on a suit under § 17.50 may recover "the amount of economic damages found by the trier of fact." *Id.* § 17.50(b)(1). "'Economic damages' means compensatory damages for pecuniary loss, including costs of repair and replacement." *Id.* § 17.45(11). The term 'economic damages' "does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society." *Id.* Additional damages, including mental anguish damages, or up to three times economic and mental anguish damages, may be awarded if the trier of fact finds that the defendant's conduct was committed knowingly or intentionally, respectively. *Id.* § 17.50(b)(1) "A damages award for mental anguish will survive a legal-sufficiency challenge when the record bears 'direct evidence of the nature, duration, and severity of [the plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *Anderson v. Durant*, 550 S.W.3d 605, 618–19 (Tex. 2018) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

### 2. Breach of Contract

"The elements for a breach of express contract claim are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract[;] and (4) the plaintiff was damaged as a result of the breach." *Doss v.*

19

*Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied).

## C.    Analysis

Altecor challenges the trial court's granting of UPC's motion for summary judgment as to her DTPA and breach of contract claims on the grounds that: (1) UPC had the burden to prove its affirmative defenses, thus a no-evidence motion for summary judgment was not appropriate;[14] (2) the motion must state the specific elements being challenged rather than generally allege there is no evidence to support the claims; (3) "[UPC]'s motion was filed long before the end of discovery," thus an adequate time for discovery had not passed. *See* TEX. R. CIV. P. 166a(i). UPC presented both traditional and no-evidence grounds in its motion for summary judgment, but the trial court did not specify the grounds upon which it granted the motion. Accordingly, we review the no-evidence grounds first. *See Parker*, 514 S.W.3d at 219. Before reviewing the merits of UPC's motion, we address Altecor's assertions.

UPC's no-evidence motion for summary judgment specifically challenged Altecor's ability to produce evidence of her own claims, not her ability to defeat their affirmative defenses. Specific to Altecor's DTPA claim, UPC asserted she "fails to put forth any admissible evidence of any 'false, misleading, or deceptive act or practice' purportedly

---

[14] UPC listed seven affirmative defenses in its answer. The defenses, as stated by UPC, are: (1) Altecor failed to state a claim on which relief can be granted; (2) Altecor's damages, if any, are limited by the policy; (3) UPC relied on case law to support its interpretation of the policy; (4) Altecor failed to provide presuit notice and was thus not entitled to attorney's fees, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002; (5) UPC was entitled to a credit and offset for all amounts previously paid to Altecor or third parties; (6) accord and satisfaction; (7) Altecor's own behavior, including failure to mitigate and "proportionate responsibility, comparative fault, and/or comparative or contributory causation."

committed by UPC." *See* Tex. R. Civ. P. 166a(i); *Doe*, 907 S.W.2d at 478. For Altecor's breach of contract claim, UPC asserted that she "[could] put forth no evidence to establish one or more of the elements of her breach of contract claim" "because UPC complied with the [p]olicy's terms and conditions," challenging Altecor's ability to prove an actual breach. *See* Tex. R. Civ. P. 166a(i); *Doss*, 210 S.W.3d at 713. Finally, with respect to all of Altecor's claims, UPC challenged her ability to present "evidence of any such alleged damages." *See* Tex. R. Civ. P. 166a(i); *Doss*, 210 S.W.3d at 713; *Doe*, 907 S.W.2d at 478. Thus, UPC's no-evidence motion for summary judgment properly challenged Altecor's ability to present evidence of specific elements, and her first and second challenges to UPC's no-evidence motion for summary judgment fail.

As for Altecor's position that an adequate time for discovery had not passed,[15] we note that she did not present this argument to the trial court in response to UPC's motion

---

[15] "Whether a nonmovant has had adequate time for discovery under rule 166a(i) is case specific." *Rest. Teams Int'l, Inc. v. MG Secs. Corp.*, 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.); *see also Castillo v. Mizpah Residential Care*, No. 13-12-00719-CV, 2014 WL 2159255, at *3 (Tex. App.—Corpus Christi–Edinburg May 22, 2014, pet. denied) (mem. op.). Ordinarily, we would review a trial court's determination that an adequate time for discovery has passed under an abuse of discretion standard. *Rest. Teams Int'l*, 95 S.W.3d at 339.

> To determine whether adequate time for discovery has passed, we examine such factors as: (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion was on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery already taken place; and (7) whether the discovery deadlines in place were specific or vague.

*Id*. Altecor did not reference any of the factors outlined but identified an additional factor by the Texas Supreme Court: "whether the party seeking a continuance has exercised due diligence to obtain discovery sought." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Altecor's argument was otherwise free from appropriate citations to controlling authority or a clear and concise argument. *See* Tex. R. App. P. 38.1(i) (requiring that briefs "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Accordingly, this argument would also be waived as inadequately briefed. *See id.*; *Smith v. Smith*, 112 S.W.3d 275, 281 n.8 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied).

21

for summary judgment. "Any issue which the non[]movant claims would justify denying summary judgment must be included *in the response.* An appellate court cannot reverse a summary judgment based on an issue not presented to the trial court." *Stewart v. Tex. Lottery Comm'n*, 975 S.W.2d 732, 735 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) (emphasis added); *see* TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 33.1(a)(1). Accordingly, this argument is waived. *See id.* We will address UPC's motion on its merits and Altecor's response thereto.

### 1. DTPA

In its motion for summary judgment, UPC specifically challenged Altecor's DTPA claim on the grounds that she could not produce evidence of a false, misleading, or deceptive act or practice or evidence of damages. *See Doe*, 907 S.W.2d at 478 (setting out the elements of a DTPA claim). In response, Altecor stated that she seeks "three types of damages": (1) "defense expense"[16]; (2) "increase of rate of the insurance"; and (3) "mental anguish." However, Altecor did not produce any evidence such as affidavits, billing records, insurance premium invoices, or medical records demonstrating damages she alleges were incurred. *See* TEX. R. CIV. P. 166a(i); *Anderson*, 550 S.W.3d at 618–19. Neither her pleadings nor her response constitutes competent summary judgment evidence. *See Laidlaw Waste Sys.*, 904 S.W.2d at 660; *Nuszen*, 494 S.W.3d at 804. Similarly, Altecor's own motion for summary judgment was absent of any affidavits, billing

---

[16] In its motion for summary judgment, UPC included an email from Altecor seeking reimbursement for attorneys' fees and expenses, and a letter from UPC stating there was an enclosed check in the amount of $16,332.50 "reflect[ing] the full claim for attorneys' fees and costs [Altecor] submitted relative to [the suit]." It is unclear whether Altecor incurred additional fees or expenses as it related to the suit.

records, insurance premiums, or medical records relating to damages.[17] *See* Tex. R. Civ. P. 166a(c). Thus, Altecor failed to raise a genuine issue of material fact as to the damages she alleges. *See id.* 166a(i). The trial court did not err in granting UPC's no-evidence motion for summary judgment and denying Altecor's traditional motion for summary judgment as to Altecor's DTPA claim.

## 2. Breach of Contract

Similar to its challenge of Altecor's DTPA claim, UPC also challenged her ability to provide evidence relating to the breach of contract elements of actual breach and damages. *See Doss*, 210 S.W.3d at 713 (setting out the elements of a breach of contract claim). Again, Altecor did not produce any evidence of damages but merely recited the types of damages she sought. *See* Tex. R. Civ. P. 166a(i). Because her pleadings and response do not constitute competent summary judgment evidence, Altecor failed to raise a genuine issue of material fact as to damages. *See id.*; *Laidlaw Waste Sys.*, 904 S.W.2d at 660; *Nuszen*, 494 S.W.3d at 804. The trial court did not err in granting UPC's no-evidence motion for summary judgment and denying Altecor's traditional motion for

---

[17] Altecor's motion for summary judgment included two exhibits, each containing various written communications between herself and UPC, dealing solely with her objections to their decision to settle Egan's claim and the attorneys' fees and expenses UPC paid to Altecor. Altecor does not address how these two exhibits support each element of her claims and leave no genuine issue of material fact as to be entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *see also Pisharodi v. Saldaña*, No. 13-13-00721-CV, 2015 WL 7352301, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2015, pet. denied) (mem. op.) ("The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law.").

summary judgment as to Altecor's breach of contract claim.[18] Accordingly, Altecor's first and second issues are overruled. *See Merriman*, 407 S.W.3d at 248 (directing appellate courts to render the judgment the trial court should have when both parties move for summary judgment).

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
24th day of February, 2022.

---

[18] Altecor argues UPC's summary judgment evidence should be stricken by this Court because her motion to strike their evidence was not ruled on and is thus a "live controversy." However, because we decide the issues solely based on UPC's no-evidence motion for summary judgment and standing, we need not address such argument for the resolution of this appeal. *See* TEX. R. APP. P. 47.4. We note, however, that Altecor's objections were not filed until after the trial court issued its letters ruling on the competing motions for summary judgment.